**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Duke,<br><br>          Plaintiff,<br><br>v.<br><br>American Express Company,<br><br>          Defendant. | No. CV-23-00125-TUC-RM (LCK)<br><br>**ORDER** |

      Pending before the Court is Plaintiff's second Motion to Compel Discovery Responses. (Doc. 65.)[1] Plaintiff seeks to compel Defendant to answer one interrogatory and one request for production, the same discovery she successfully moved to compel a year ago. Defendant responded, and Plaintiff replied. (Docs. 70, 71.)

## BACKGROUND

      The Complaint alleges that Defendant violated the "Telephone Consumer Protection Act by making pre-recorded calls to consumers' phone numbers without first obtaining their prior express consent." (Doc. 1 at 1.) As to herself, Plaintiff alleges that she received unwanted calls on her cell phone from Defendant beginning in August 2022 up to November 1, 2022. (*Id.* at ¶¶ 22-36.) She repeatedly notified Defendant to stop calling her and that she was not a customer. (*Id.*) Plaintiff seeks to bring a claim on behalf of a class that she identified, in a court hearing, as "all persons who received a

---

[1] The Court cites primarily to the public version of the document, which contains some redactions. Plaintiff submitted an unredacted version under seal that included a sealed exhibit not attached to the publicly docketed motion. (Doc. 69.)

prerecorded call to their cellular telephone number using an artificial voice or prerecorded voice who are not account holders of defendant." (Doc. 44 at 4.)

Plaintiff's claim is brought under the following Telephone Consumer Protection Act (TCPA) provision:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> . . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(iii).

Plaintiff seeks to compel responses to one interrogatory and one request for production. Interrogatory Number 7 asked:

> For the telephone numbers Defendant referenced by interrogatory nos. 4-5,[1] identify the number of calls, in connection with which it used an artificial or prerecorded voice, that Defendant made, or caused to be made, to the telephone numbers.
>
> [1] Interrogatory no. 4 requests:
>
>> telephone numbers for which Defendant's records show that (i) a called party was not the person Defendant intended to reach by placing a call to one of the telephone numbers, (ii) a person associated with one of the telephone numbers indicated that Defendant contacted the wrong person or telephone number, or (iii) a vendor identified the telephone number as a potential wrong or reassigned telephone number.
>
> Interrogatory no. 5 requests:
>
>> telephone numbers to which Defendant made, or caused to be made, calls, in connection with which Defendant used an artificial or prerecorded voice that the Defendant had dispositioned the relevant phone number as an "Invalid Number."

(Doc. 65 at 6-7.) On September 19, 2023, Defendant objected to Interrogatory Number 7 as vague, overbroad, unduly burdensome and harassing, and seeking information that is not relevant or proportional, and is confidential. (*Id.* at 7.) Defendant went on to provide the following answer:

> Without waiving, and subject to, these objections and the General Objections, American Express responds to this Interrogatory as follows: American Express cannot readily determine the frequency with which an error made by a cardmember on an application results in the making of a phone call to someone other than the cardmember, the frequency with which such calls might be made to a cellular telephone, or the frequency with which such calls might be made with pre-recorded or artificial voice technology. Nor can American Express systematically determine who might have received such calls as a result of cardmember error.

(*Id.*) Request For Production Number 7 asked:

> For the telephone numbers referenced by interrogatory nos. 4-5, and request for production nos. 4-5, documents and electronically stored information sufficient to identify the calls, in connection with which it used an artificial or rerecorded voice, and the total number of them, that Defendant made, or caused to be made, to those telephone numbers.

(*Id.* at 7-8.) On September 19, 2023, Defendant objected to Request For Production Number 7 as overbroad, unduly burdensome and harassing, and seeking information that is not relevant or proportional to the case, and is confidential and private. (*Id.* at 8.)

Before the parties resolved their dispute over the above discovery requests, they requested, and were granted, a discovery extension to allow them time to participate in a private mediation. (Docs. 30, 31.) The mediation was unsuccessful. The parties then engaged in a meet and confer regarding discovery. As a result of that process, Plaintiff reframed the disputed discovery requests to conform generally to what she perceived to be "the steps outlined by American Express[] prior to mediation," "to identify potential class members":

> records reflecting each attempt by Amex, or a vendor on Amex's behalf, to place a pre-recorded or artificial voice call to a phone number not identified as a landline in Amex's records and for which Amex's records reflect at least one instance of a wrong party/never call notation on an account associated with the phone number for all Amex accounts for the period of March 2019 through June 2024.

(Doc. 32 at 2.) Defendant refused to produce the information sought in the modified request. Therefore, Plaintiff filed a motion to compel. (Doc. 32.) On September 10, 2024,

- 3 -

the judge granted the motion, ordering Defendant to produce:

> records reflecting each attempt by Defendant or a vendor on Defendant's behalf to place a pre-recorded or artificial voice call to a phone number (not identified as a landline in Defendant's records) for which Defendant's records reflect at least one instance of a wrong party/never call notation on an account associated with the phone number, for all Amex accounts for the period of March 2019 through January 2024. As discussed with the Court, these records will reflect the 3,133 numbers identified by Defendant in May 2024.

(Doc. 43.) Defendant produced the 3,133 numbers and the discovery process continued. Plaintiff's motion for class certification was due on February 11, 2025, and discovery was set to close on April 18, 2025. (Doc. 49.)

On February 5, Plaintiff filed a notice that the parties had reached a settlement (in principle) to settle claims on a class-wide basis. (Doc. 50.) While negotiating the intended settlement, Plaintiff deposed Brian Duckworth, Defendant's Director of Outbound Contact Strategy. He was questioned about the process American Express used to generate the 3,133 numbers it had produced. (Doc. 69, Ex. 1 at 5-7.) Almost three months later, Plaintiff informed the Court that the parties had been unable to finalize a settlement due, in great part, to the information learned from Duckworth. (Docs. 57, 59.)

During a status conference with the Court, Plaintiff explained that the parties had a dispute regarding whether the discovery produced in response to the Court's granting of the motion to compel conformed to Defendant's description of the information. When the parties were, again, unable to resolve their dispute, Plaintiff filed a second motion to compel as to the same discovery requests, Interrogatory Number 7 and Request for Production Number 7. (Doc. 65.)

**ANALYSIS**

Plaintiff contends the requested discovery is relevant to the issues of numerosity and commonality for purposes of class certification under Rule 23. Defendant argues that it should not have to provide the requested discovery because producing it will not reveal a certifiable class, implicates privacy concerns, and is disproportionate to the needs of the case.

> The federal rules set forth the scope of allowed discovery:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

"Resolution of a motion to compel discovery is a matter within the Court's discretion. *Miller v. York Risk Servs. Grp.*, No. CV-13-01419-PHX-JWS, 2014 WL 12656714, at *2 (D. Ariz. June 23, 2014) (citing *Surfvivor Media. Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). A party may move to compel discovery if a party failed to answer an interrogatory or failed to produce documents. Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party that requests the Court to compel discovery must demonstrate that the information is relevant. *Miller*, 2014 WL 12656714, at *2.

### **Certifiability of a Class**

Defendant argues that Plaintiff is not entitled to the requested discovery because the information will not demonstrate a certifiable class. This Court has substantial discretion in controlling the class certification process and the availability of discovery, recognizing that "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). In fact, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Id.* (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (upholding a limitation on discovery based on unique facts of case and the plaintiff's failure to make a prima facie showing of Rule 23's requirements)). Defendant has not filed a motion to dismiss the class

allegations nor established that Plaintiff has not alleged "a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1420, 1424 (9th Cir. 1985), as amended (Aug. 27, 1985) (finding the district court did not abuse its discretion in denying expanded class discovery and noting that the court had granted the defendant's motion to dismiss the class allegations); *see also Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-C-5490, 2013 WL 5348377, at *7 (N.D. Ill. Sept. 24, 2013) (rejecting the defendant's argument that discovery should be denied based on the tenuousness of the class allegations because defendant had not filed a motion to dismiss).

   The Court will not permit Defendant "on one hand to contest class certification and on the other hand deny [P]laintiff the discovery relevant to its position that a class should be certified." *Id.* at *4. District courts regularly find outbound call logs, such as those requested by Plaintiff, relevant to class certification requirements and order defendants to produce call logs in TCPA putative class action cases. *See, e.g., Gebka v. Allstate Corp.*, No. 19-cv-06662, 2021 WL 825612, at *7-8 (N.D. Ill. Mar. 4, 2021) (collecting cases); *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPC-MDD, 2018 WL 1791910, at *1, 4 (S.D. Cal. Apr. 16, 2018); *Medina v. Enhanced Recovery Co., LLC*, No. 15-14342-CIV-MARTINEZ/MAYNARD, 2017 WL 5196093 (S.D. Fl. Nov. 9, 2017); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-cv-02229-SB, 2017 WL 2346981, at *5-6 (E.D. Cal. May 30, 2017); *Webb v. Healthcare Revenue Recovery Group LLC*, No. C. 13-00737-RS, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014). Further, this Court has certified a class even though a "substantial proportion" of the phone numbers designated as wrong numbers through discovery may not truly fit in the category of a wrong number. *Head v. Citibank, N.A.*, 340 F.R.D. 145, 153 (D. Ariz. 2022); *see also Fralish v. Digital Media Solutions, Inc.*, No. 3:21-CV-00045-JD-MGG, 2021 WL 5370104, at *9 (N.D. Ind. Nov. 17, 2021) (finding scope of request relevant although it likely would include information regarding individuals who did not have a TCPA claim).

Defendant may not litigate class certification by way of a discovery motion. Additionally, Plaintiff should not be prohibited from discovery because it is not currently clear how she will establish standing and harm as to all class members. *Cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016) (finding a post-trial challenge to a jury award, based on the possibility that uninjured class members would obtain a recovery, was premature because no allocation had been finalized for the award). The Court finds that Plaintiff has demonstrated the requested discovery to be relevant.

### Privacy

Defendant argues that Plaintiff is seeking private account holder information from customers that are not part of the class. Defendant characteries Plaintiff's request as seeking "comprehensive data about and analysis of the records of AENB customers," and "account notes of AENB customers over the span of more than five years." The Court finds that this mischaracterizes Plaintiff's request. Although Defendant may need to analyze information from customer accounts to respond to the discovery requests, Plaintiff is not seeking the disclosure of any financial information. She did not request account information, or the reason Defendant placed any of the calls. The intention is for Plaintiff to obtain phone numbers that belong to <u>non-account holders</u> and the number of times Defendant placed a prerecorded voice call to each number. Because no private information of Defendant's customers has been requested, although some numbers of actual account holders may be included in the disclosure, the Court finds there is no meaningful privacy concern. *See Mbazomo*, 2017 WL 2346981, at *3 ("In determining TCPA actions, California federal courts routinely hold that name and telephone number disclosures do not present a serious privacy invasion."). Additionally, the Court has entered a Protective Order, and Defendant can produce discovery with a confidential designation if there are legitimate privacy concerns.

### Undue Burden and Proportionality

Defendant argues that the discovery requests would impose undue burden and cost out of proportion to the needs of the case. Defendant, by way of a 2024 declaration from

Charles Ben Sailer, avers that the requested data was used in two different applications, is stored in three databases, and requires a search of 100 terabytes of data. (Doc. 70-1, Ex. A ¶¶ 6-7.) Sailer states that the search would take 16 weeks, require 5 employees, and cost Defendant $100,000. (*Id.* ¶¶ 8, 10.) Based on this information, Defendant argues the discovery would place an undue burden and cost on Defendant.

Defendant cites two TCPA cases to support its assertion that the requests amount to an undue burden. In both, the Court ultimately allowed the type of discovery requested by Plaintiff. In *Terteryan v. Nissan Motor Acceptance Corp.*, No. CV 16-2029-GW (KSx), 2017 WL 10991656, at *1-2 (C.D. Cal. Oct. 19, 2017), the plaintiff asked the defendant to create a compilation of 17 categories of information regarding calls to non-customers. The court sustained the defendant's objection to answer this request because a party is not obligated to create documents for discovery responses and the defendant estimated it would cost $188,700,000 to respond. *Id.* at *6. However, the Court found that the plaintiffs had "demonstrated a legitimate need for information that is uniquely in the possession, custody and control" of defendant; therefore, the Court ordered production of call logs and three other related categories for a nine-month period. *Id.* at *6-7. In *Gossett v. CMRE Financial Servs.*, 142 F. Supp.3d 1083, 1089 (S.D. Cal. Oct. 30, 2015), the court denied requests for numbers obtained by skip tracing and number trapping because the defendant averred these numbers were only dialed by humans and not automated dialers. However, the court directed the production of outbound call lists and related documents, rejecting defendant's arguments that the requests were irrelevant, overly broad and unduly burdensome, invaded privacy rights, and premature. *Id.* at 1086-87 (citing *Thrasher v. CMRE*, No. 14-CV-1540 BEN (NLS), 2015 WL 1138469 (S.D. Cal. Mar. 13, 2015)).

It is not evident to the Court that obtaining the requested discovery will require Defendant to follow the elaborate process set forth in 2024 by Sailer.[2] Sailer's declaration

---

[2] Although not clearly articulated, it may be that the search process described by Sailer is so time intensive because its purpose would be trying to locate records directly mirroring the circumstances under which American Express called Plaintiff. That is, only phone numbers that were called because a customer mistakenly provided the wrong

does not seem to reflect the process described by Duckworth. Duckworth testified that Defendant's dialing systems could be searched for calls resulting in a wrong number notation in the "call result field." (Doc. 69-1 at 12.) Defendant would then determine which of those numbers received one or more prerecorded calls during the class period. And, finally, Defendant could screen any numbers designated as landlines. American Express already has conducted a more complicated version of this search for mediation purposes+++++ and need only repeat a modified version of those steps again. Defendant has failed to demonstrate that the requested discovery is an undue burden or that it is not proportional to the case to require Defendant to produce the only information available for Plaintiff to support its motion for class certification.

**Conclusion**

The Court finds that Plaintiff has demonstrated the requested information is relevant. And Defendant has not demonstrated that producing it has significant privacy implications or is unduly burdensome. The Court will grant the motion to compel and direct Defendant to respond to Plaintiff's discovery requests and produce the information the Court understood was to be produced in response to the Court's September 10, 2024, Order.

Duckworth's deposition revealed that the 3,133 numbers disclosed by Defendant had been gathered through a process that almost certainly reduced the data set requested by Plaintiff and ordered by the Court in September 2024. (Doc. 69-1.) First, Duckworth testified that the initial step in the process was for Defendant to identify phone numbers for which a complaint, *identified by a keyword search alluding to harassment*, had been lodged with Defendant. (*Id.* at 8-9, 10.) This limitation was not warranted by the discovery request. And Defendant never disclosed to Plaintiff or the Court that this initial step was used to come up with the 3,133 numbers used for mediation.

---

phone number for an account that later became delinquent. (Doc. 70-1, Ex. A ¶¶ 4-5.) That search would not be reflective of the discovery requested.

- 9 -

Second, Defendant ultimately disclosed only phone numbers that received a prerecorded call <u>after</u> a wrong party notation was documented for that number. (*Id.* at 12-13.) That limitation is not warranted under the governing law. The TCPA is violated when a prerecorded call is placed to a cell phone number without express consent, it does not require that the caller know it is reaching a number it does not have consent to call. *See N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent."); 47 U.S.C. § 227(b) (listing an exception to the TCPA's prohibition on prerecorded voice calls to cell phones if the caller has the "prior express consent of the called party"). In a May 2, 2024, letter to Plaintiff's counsel, that was submitted informally to the Court, Defendant noted that the 3,133 numbers reflected only prerecorded calls made after American Express documented a number as wrong. However, Defendant did not mention this time parameter in its briefing or at the hearing on the initial motion to compel. (Docs. 37, 44.) Defendant's proposal for data sampling suffers from the same unwarranted limitation—that a number would fall outside the intended data set if it did not receive a prerecorded voice call within 30 days <u>after</u> it was coded as a wrong number. (Doc. 70-2 ¶ 3.)

Defendant knew that its process used to gather the 3,133 numbers did not match Plaintiff's summary of what she understood to be the process. This is demonstrated by a comparison of the May 2, 2024, letter from Defendant's counsel and Plaintiff's summary of the process in her original motion to compel (Doc. 32 at 2). Also, in Sailer's 2024 declaration, he reiterated Plaintiff's modified request (intended to mirror Defendant's search for purposes of mediation), as seeking records reflecting <u>each</u> attempt to call a number with <u>at least one</u> wrong party/never call notation. (Doc. 70-1, Ex. A ¶ 3 (emphasis added).) As opposed to numbers for which a complaint had been lodged and a call made after Defendant determined it was a wrong number.

Critically, in complying with the Court's September 10, 2024, Order, Defendant produced the 3,133 numbers as directed. (Doc. 43.) However, that production did not match the additional language of the Court's order, which required the production of:

> records reflecting each attempt by Amex, or a vendor on Amex's behalf, to place a pre-recorded or artificial voice call to a phone number not identified as a landline in Amex's records and for which Amex's records reflect at least one instance of a wrong party/never call notation on an account associated with the phone number for all Amex accounts for the period of March 2019 through June 2024.

(*Id.*) Thus, Defendant's production did not mirror what the Court believed it represented (Docs. 43, 44) or what Plaintiff requested (Doc. 32 at 2; Doc. 43), and it excluded possible members of the intended class that could be covered under the TCPA.

Now that the Court has resolved the parties' discovery dispute, below it sets a schedule for the remainder of the pretrial period of the case. As the Court previously indicated to the parties, the remaining deadlines are somewhat tight, and they are firm. Plaintiff has indicated that she must complete Defendant's 30(b)(6) deposition before filing her motion for class certification. Defendant is directed to facilitate the corporate deposition to take place in time for Plaintiff to meet her deadline for seeking class certification.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel (Doc. 65) is **GRANTED**. On or before **August 15, 2025**, Defendant American Express shall provide the following discovery to Plaintiff:

> records reflecting each attempt by Defendant or a vendor on Defendant's behalf to place a pre-recorded or artificial voice call to a phone number (not identified as a landline in Defendant's records) for which Defendant's records reflect at least one instance of a wrong party/never call notation on an account associated with the phone number, for all Amex accounts during the class period.

Based on the briefing, the Court believes this summary encompasses the information Plaintiff seeks in Interrogatory Number 7 and Request for Production Number 7.

**IT IS FURTHER ORDERED** that the following deadlines will govern the remainder of the pretrial litigation period:

1. Plaintiff shall file her motion for class certification and disclose class experts on or before **October 17, 2025**.
2. Defendant shall respond to the motion for class certification and disclose rebuttal class experts on or before **November 21, 2025**.
3. Plaintiff may file a reply regarding the motion for class certification on or before **December 5, 2025**.
4. The parties' deadline for initial expert disclosures, separate and apart from experts related to class certification, is **November 14, 2025**.
5. The deadline for general rebuttal expert disclosures, if any, is **December 5, 2025**.
6. All discovery shall be completed on or before **December 19, 2025**.
7. Dispositive motions are due forty-five (45) days after the Court issues a final ruling on the motion for class certification.

Dated this 11th day of July, 2025.

*/s/ Lynnette C. Kimmins*
Honorable Lynnette C. Kimmins
United States Magistrate Judge